IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>V.<br><br>SALVATORE PELULLO. | :<br>:<br>:<br>:  CRIM. NO. 11-740 (RBK)<br>:<br>:<br>:<br>: |

MEMORANDUM OF LAW IN SUPPORT OF
SALVATORE PELULLO'S 28 U.S.C. § 2255 MOTION

Mr. Pelullo brings this petition pursuant to 28 U.S.C. § 2255 to challenge the constitutionality of his conviction under 18 U.S.C. § 922(d)(1) for providing firearms to himself and a co-defendant, both of whom had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, and 18 U.S.C. § 922(g)(1) for personally possessing firearms following the same underlying prior convictions. In light of the Supreme Court's ruling in *Bruen* and the Third Circuit's *en banc* decision in *Range*, § 922(d) and (g) are unconstitutional as applied to Mr. Pelullo because the prior convictions of Mr. Pelullo and his co-defendant were non-violent and have no proper historical analogue rooted in this nation's history and tradition. As set forth in detail below, the government cannot carry its burden to establish that Pelullo's prior convictions for bank fraud, false statements, and wire fraud and his co-defendant's prior conviction for illegal gambling are the kinds of offenses that the framers would have recognized as conduct that would allow for permanent firearm dispossession.

In *Range v. Attorney General*, the Third Circuit *en banc* panel held that §922(g) was unconstitutional as applied to an individual who had a prior non-violent conviction for making false statements in conjunction with an application for welfare benefits because, in accordance with the Second Amendment analysis set forth in *Bruen*, no relevant historical analogue exists in the history and tradition of this nation to support the constitutionality of § 922(g) as applied to

him. Since the *Bruen* and *Range* decisions, courts in this circuit and across the country have grappled with the constitutionality of § 922, with many courts holding that § 922 is unconstitutional as applied to a variety of cases, particularly as to individuals whose prior convictions are nonviolent. Because Mr. Pelullo's prior convictions are relevantly indistinguishable from the underlying convictions of the *Range* petitioner, this Court should vacate Mr. Pelullo's § 922 conviction and hold a new trial on the remaining counts set forth in Mr. Pelullo's indictment.

I. **FACTUAL BACKGROUND AND STATEMENT OF THE CASE**[1]

On October 26, 2011, the government filed a 24 count indictment against Salvatore Pelullo ("Mr. Pelullo" or "Petitioner") and thirteen co-defendants, alleging, among other things, a racketeering conspiracy, securities fraud, wire fraud, and money laundering. Primarily at issue in this Petition is Count 24, which alleged violations of 18 U.S.C. §§ 922(d)(1) and (g)(1).

18 U.S.C. §§ 922(d)(1) and (g)(1) provide: "It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . (1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" and "It shall be unlawful for any person— (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Count 24 alleged that Pelullo engaged in a conspiracy "to provide firearms and ammunition to [himself and a co-defendant]," which was illegal because Pelullo and a co-defendant had each previously been convicted of a

---

[1] This matter has a long and complicated history, including a trial that lasted over five months. The factual background is limited only to the issues that are pertinent to the relief requested in this petition.

crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(d)(1) and 18 U.S.C. § 922(g)(1). The predicate crimes underpinning these alleged violations were that Mr. Pelullo had been previously convicted of bank fraud, wire fraud, and securities fraud and his co-defendant had been convicted of illegal gambling – all non-violent offenses. *See* Case No. 99-cr-121-2 (E.D. Pa.); Case No. 02-cr-346 (E.D. Pa.); and Case No. 00-cr-404 (D. NJ). As a result of pleading guilty to these non-violent offenses, Mr. Pelullo received a sentence of six months incarceration on the 1999 case and six months house arrest on the 2002 case, while Mr. Pelullo's co-defendant served a three year term of supervised release.

Opening statements in the instant matter began on January 6, 2014, and closing arguments took place between June 4 and June 16, 2014. It is undisputed that the defendants did not use the firearms to perpetuate any of the other offenses alleged in the indictment. However, the guns permeated the trial, to the great prejudice of Mr. Pelullo.

Throughout the trial, the government repeatedly paraded the firearms connected with Count 24 before the jury despite the fact that other counts had no connection with possession and/or receipt of firearms. For instance, the Government presented the testimony of FBI Agent Jerry Hester, who detailed the seizure of the firearms and ammunition. Agent Hester not only presented an account of the seizure through photographs, the weapons themselves were paraded before the jury for maximum effect. Specifically, Agent Hester was permitted to walk back and forth in front of the jury, displaying the guns and magazines to each juror. The following firearms and ammunition were shown to the jury and prominently displayed for the duration of trial.

    a. Norinco 7.62 caliber rifle, model SKS;
    b. Ewbank 7.62 caliber rifle, model EMAKM;
    c. Wei Dong 12 gauge shotgun, model SAS12;
    d. Sig Sauer 9mm pistol, model P-6;
    e. Taurus .38 caliber revolver, model 83;
    f. Taurus .22 caliber pistol, model PT-22;
    g. Approximately 2500 rounds of 7.62 caliber ammunition; and
    h. Seventeen additional boxes of ammunition.

On July 3, 2014, a jury convicted Mr. Pelullo on all counts, including Count 24.

Months after all briefing had been submitted in Mr. Pelullo's appeal to the Third Circuit, on June 23, 2022, the Supreme Court decided *Bruen*, which clarified the analysis for assessing the constitutionality of a law that implicates the Second Amendment, placing the burden on the government to show that the regulation is consistent with this nation's history and tradition. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). On March 20, 2023, the Supreme Court denied Mr. Pelullo's petition for writ of certiorari. On June 6, 2023, the Third Circuit *en banc* decided *Range*, which held § 922(g) unconstitutional as applied to an individual who had a prior conviction for making false statements to obtain food stamps. *Range v. Att'y Gen. United States of Am.,* 69 F.4th 96, 100 (3d Cir. 2023).

Pelullo petitions this Court on the basis that 18 U.S.C. § 922 is unconstitutional as applied to him in light of the holding of *Bruen* and the Third Circuit's *en banc* decision in *Range*. The underlying crimes of conviction of Mr. Pelullo and his co-defendant – all of which are non-violent and none of which resulted in a term of incarceration for longer than six months – do no provide a sufficient basis to disarm Mr. Pelullo or his co-defendant for life. Because no historical analogue in this nation's history or tradition support the permanent disarmament prescribed by § 922, Mr. Pelullo's conviction on Count 24 is unconstitutional as applied and must be vacated. To the extent vacating Count 24 is not in of itself sufficient to warrant a new trial, the introduction of collateral, irrelevant evidence of Mr. Pelullo's lawful firearm possession caused actual prejudice to him during trial, and this Court should vacate Mr. Pelullo's entire conviction and order a new trial.

## II. ARGUMENT

### A. Habeas Standard and the Basis of the Constitutional Violation.

"A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to 'vacate, set aside, or correct'

a sentence 'imposed in violation of the Constitution or laws of the United States.'" 28 U.S.C. § 2255(a). *United States v. McLaughlin*, 607 F. Supp. 3d 522, 530 (M.D. Pa. 2022). "Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences" on constitutional grounds. *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002).

Under Section 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. *United States v. Scott*, 521 F. Supp. 3d 538, 542–43 (M.D. Pa. 2021) *citing* 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, among other things, "that the sentence was imposed in violation of the Constitution or the laws of the United States." *Id.*; *see also* 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* Nevertheless, Courts have held that an error cannot be redressed through a § 2255 petition unless the error had a "substantial and injurious effect" that resulted in "actual prejudice" to the petitioner. *Clark v. United States*, 2021 WL 3561246, at *4 (D.N.J. Aug. 12, 2021) *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citations omitted). Courts must accept the truth of the defendant's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous based on the existing record." *Scott*, 521 F. Supp. 3d at 542–43 *citing United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005).

Mr. Pelullo moves this Court to vacate his sentence and order a new trial because the Supreme Court's decision in *Bruen* as interpreted by the Third Circuit's *en banc* decision in *Range* renders his conviction pursuant to 18 U.S.C. § 922(d) and (g) unconstitutional as applied. As set forth below, a post-*Bruen* Second Amendment analysis first considers "whether the text of the Second Amendment applies to a person and his proposed conduct." *Range*, 69 F.4th at 101 *citing*

*Bruen*, 142 S. Ct. at 2134–35. If it does, the government then "bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* at 2127. Mr. Pelullo, whose § 922 triggering offenses are relevantly identical to the petitioner's in *Range,* meets this test for the same exact reasons as did the petitioner in *Range*.

Because of the inclusion of the unconstitutional § 922 charges in the indictment, the government put evidence of Mr. Pelullo's otherwise lawful firearm possession in front of the jury, something the government repeatedly used to imply that Mr. Pelullo was violent or coercive with regard to the other crimes alleged. Stated differently, the inclusion of the § 922 charges allowed the government to use irrelevant, highly prejudicial evidence of Mr. Pelullo's lawful gun ownership as a cudgel to bash his character with collateral evidence, even going so far as to place a table strewn with guns directly in front of the jury. To the extent vacating Count 24 is not sufficient on its own to warrant a new trial, the government's use of firearm evidence, which has no probative value to the other crimes charged in the indictment and could only be used to smear Mr. Pelullo's character, warrant granting the relief requested in this petition. Mr. Pelullo is entitled to a new trial.

B. **18 U.S.C. § 922 as Applied to Mr. Pelullo is Unconstitutional for the Same Reasons it was Unconstitutional as Applied to the Petitioner in** *Range***.**

In *Bruen*, the Supreme Court declared: "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Range*, 69 F.4th at 100 *citing Bruen*, 142 S. Ct. at 2126. Instead, those cases instruct "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the

individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Therefore, when assessing the constitutionality of a Second Amendment issue after *Bruen*, Courts must first determine whether the Second Amendment applies to a person and his conduct, and if so, the government has the burden of proving that the firearm regulation is consistent with this nation's historical tradition. *Range*, 69 F.4th at 100. In this instance, Mr. Pelullo, like the Petitioner in *Range*, asserts an as-applied challenge to § 922(g), meaning that he need not show that § 922 is unconstitutional in all instances, only that it is unconstitutional to his particular circumstances. *See United States of America v. Williams,* No. 3:21-CR-34, at *9 (M.D. Pa. Feb. 16, 2024) *quoting Mazo* v. *New Jersey Sec'y of State*, 54 F.4th 124, 134 & n.7 (3d Cir. 2022) (the standard for bringing an as-applied challenge "is less demanding; a plaintiff need only show that a law's application to a particular person under particular circumstances deprived that person of a constitutional right.").

This Court should rule in favor of Mr. Pelullo because, pursuant to the test set forth in *Bruen* as interpreted by the Third Circuit, he and his co-defendant had a constitutional right to possess the guns at issue in Count 24 of the indictment. Because § 922 as applied to Pelullo is relevantly indistinguishable from § 922 as applied to the petitioner in *Range*, Mr. Pelullo's conviction on Count 24 must be vacated. *See Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 98 (3d Cir. 2023) ("We agree with Range that, despite his false statement conviction, he remains among 'the people' protected by the Second Amendment. And because the Government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support disarming Range, we will reverse and remand.").

### 1. For the Same Reasons as Set Forth in *Range*, Mr. Pelullo is one of "The People" Afforded Protection by the Second Amendment.

Binding Third Circuit precedent establishes that Mr. Pelullo is one the "The People" who are afforded protection by the Second Amendment. The Supreme Court has held that the right afforded by the Second Amendment "belongs to all Americans." *D.C. v. Heller*, 554 U.S. 570, 581 (2008). In holding that the petitioner was one the "the people" afforded protection by the Second Amendment, the Third Circuit in *Range* squarely rejected that the Second Amendment only applies to "law-abiding citizens" (*i.e.* only those who do not have prior convictions). *Range*, 69 F.4th at 101.

The *en banc* majority reached this decision by determining that (1) The portion of *Heller* that referenced law abiding citizens is dicta; (2) The constitution uses the phrase "the people" in multiple places, including the Second Amendment, and none of those provisions apply *only* to "law-abiding citizens"; (3) That, like other constitutional rights, even those people may avail themselves to the protections afforded by the Second Amendment may still be denied that protection in certain circumstances, and it is therefore incorrect to determine that those with prior convictions *per se* lose their Second Amendment rights; and that (4) the Second Amendment cannot just apply to "law-abiding, responsible citizens" because that framing is too vague and expansive and has no limiting principle. *Id.* at 101-02.

Accordingly, *Range* squarely rejects the argument that the Second Amendment does not apply to individuals who have prior criminal convictions. Therefore, Mr. Pelullo, like the Petitioner in *Range*, clearly maintains his Second Amendment rights, and the burden shifts to the government to show that our Nation's history and tradition of firearm regulation supports disarming Mr. Pelullo. *See Range*, 69 F.4th 96 at 103 ("Because Range and his proposed conduct are protected by the Second Amendment, we now ask whether the Government can strip him of his right to keep and bear arms.").

### 2. The Government Cannot Carry its Burden to Show that a Relevant Historical Analogue Exists to Support Pelullo's Conviction.

The government cannot carry its burden in establishing that § 922 is constitutional as applied to Mr. Pelullo for the same reason that it could not establish that § 922 is constitutional as applied to the petitioner in *Range*. In determining whether the government can strip an individual of his Second Amendment rights, the government has the burden to show that the law as applied to the challenger, "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Range*, 69 F.4th 96 at 103 *citing Bruen*, 142 S. Ct. at 2127. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin.*'" *Range*, 69 F.4th 96 at 103 *quoting Bruen*, 142 S. Ct. at 2133 (emphasis in original). "To be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue." *Range*, 69 F.4th 96 at 103 *quoting Bruen*, 142 S. Ct. at 2131. But "modern regulations that were unimaginable at the founding" need only be "relevantly similar" to one. *Range*, 69 F.4th 96 at 103 *quoting Bruen*, 142 S. Ct. at 2132. *Bruen* offers two metrics that courts may use to determine whether historical and modern firearms regulations are similar enough to pass constitutional muster: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Range*, 69 F.4th 96 at 103 *quoting Bruen*, 142 S. Ct. at 2133.

The Petitioner in *Range* had a prior conviction for making false statements to an agency of the Commonwealth of Pennsylvania, a crime punishable by more than the threshold required to trigger permanent firearm dispossession pursuant to § 922(g). The *Range* petitioner challenged the constitutionality of § 922 as applied to him, and the Third Circuit held that "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second

Amendment rights." *Range*, 69 F.4th at 106. While the Third Circuit stated that its decision was "a narrow one," every aspect of the Court's analysis applies with equal force to Mr. Pelullo. *Id.*

Like the petitioner in *Range*, the triggering offenses of Mr. Pelullo and his co-defendant are all non-violent offenses. Further, like the *Range* petitioner, who served only a probationary sentence for his crime, neither Mr. Pelullo nor his co-defendant actually served a term of incarceration beyond the one-year threshold for federal crimes set forth in § 922. Accordingly, and as set forth below, each and every possible historical analogue offered by the government in *Range* should be rejected as a matter of law in Mr. Pelullo's case.

First, the government in *Range* argued that the Supreme Court in *Heller* said, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[,]" and therefore disarming felons must be deeply rooted in this nation's history. *Range*, 69 F.4th 96 at 103 *quoting Heller*, 554 U.S. at 626. However, the Third Circuit observed that the earliest version of the Federal Firearms Act of 1938 "applied only to *violent* criminals," noting:

> As the First Circuit explained: "the current federal felony firearm ban differs considerably from the [original] version …. [T]he law initially covered those convicted of a limited set of violent crimes such as murder, rape, kidnapping, and burglary, but extended to both felons and misdemeanants convicted of qualifying offenses." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011); *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

*Range*, 69 F.4th at 104 (emphasis in original). Therefore, setting aside the question of whether a law from 1938 is old enough to be deeply rooted in this nation's history and tradition, the Third Circuit held that an offense not criminalized until 1961 certainly was not old enough to pass constitutional muster. *Id.* Accordingly, because the petitioner in *Range*, like Mr. Pelullo, had no violent triggering offenses, the current version of § 922(g) is not longstanding enough to justify its own constitutionality as applied to him.

Next, the Third Circuit rejected the argument that the *Range* petitioner could be disarmed based on his status as a convicted felon. *Range*, 69 F.4th at 104 ("That Founding-era governments disarmed groups they distrusted like Loyalists, Native Americans, Quakers, Catholics, and Blacks does nothing to prove that Range is part of a similar group today. And any such analogy would be far too broad[ ].") (citations omitted). Likewise, and for the largely the same reason, the Third Circuit rejected the government's argument that because some convicts have historically faced harsher punishments than just disarmament, such as execution, a lesser punishment, is therefore constitutional. *Id.* ("That Founding-era governments punished some nonviolent crimes with death does not suggest that the *particular* (and distinct) punishment at issue—lifetime disarmament—is rooted in our Nation's history and tradition."). Finally, the Third Circuit *en banc* majority rejected out of Circuit case law from its sister circuits that did find that "those convicted of felonies are not among those entitled to possess arms," holding that those authorities "fail to persuade." *Id.* at 106.

As Mr. Pelullo's prior convictions involve the similar false statements for financial gain and likewise show no indicia of violence, the Third Circuit's holding that § 922 is unconstitutional as applied to the *Range* petitioner applies with equal force to Mr. Pelullo.

Following *Range*, a number of courts have held § 922(g) to be unconstitutional as applied, most frequently when dismissing indictments. *See e.g. United States v. Quailes*, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023) (dismissing indictment when defendant had prior convictions for felony drug offenses involving the possession with intent to distribute heroin and cocaine, holding that general regulations establishing "disarming the dangerous" were an insufficient historical analogue to carry the government's burden.); *United States v. Harper*, 2023 WL 5672311, at *12–13 (M.D. Pa. Sept. 1, 2023) (dismissing indictment when defendant had prior armed robbery and drug convictions, rejecting a "dangerousness" standard and instead holding that the government has the burden to show that disarming individuals for specific offenses were

consistent with this nation's history and tradition); *United States v. Griffin*, 2023 WL 8281564, at *9 (N.D. Ill. Nov. 30, 2023) (Ruling 922(g) as unconstitutional as applied despite the defendant's prior convictions for robbery, criminal trespass, and possession of controlled substances: "While the Court acknowledges that Griffin, now age 35, does not have a 'clean' record, the Court finds that Griffin's criminal record, containing no improper use of a weapon, as well as the non-violent circumstances of his arrest do not support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly and should be deprived of his Second Amendment right to bear arms in self-defense."); *United States v. Cherry*, 2024 WL 379999, at *5 (S.D. Ill. Feb. 1, 2024) (Dismissing 922(g) indictment despite the defendant having, "felony convictions for an acting with others Aggravated Robbery and Attempted Vehicular Hijacking when [defendant] was 17 years old" and "federal felon in possession of a weapon charges."); *United States v. Anderson*, No. 22 CR 0594, 2023 WL 7531169, at *11 (N.D. Ill. Nov. 13, 2023) (Recognizing that gun violence is a societal problem, but nevertheless holding "this court is unable to uphold § 922(g)(1) as constitutional due to *Bruen*'s instruction that the government must provide evidence of a historical analogue that is both comparably justified and comparably burdensome of the right to keep and bear arms."); *United States v. Bullock*, 2023 WL 4232309, at *31 (S.D. Miss. June 28, 2023) ("Mr. Bullock presents an as-applied challenge to § 922(g)(1). He contends that the charge against him, and him only, should be dismissed because 'the prosecution has failed to establish a 'historical tradition' supporting lifetime criminalization of [his] possession of a firearm.' The Court agrees."); *United States v. Williams*, No. 23-CR-20201, 2024 WL 731932, at *25 (E.D. Mich. Feb. 22, 2024) ("Because the government does not identify a historical analog that is 'distinctly similar' or 'relevantly similar' to § 922(g)(1), the Court is required by *Bruen* to find the statute unconstitutional as applied to Defendant.").

While all of the above cases held that § 922 as applied was unconstitutional, they involved crimes (typically drug crimes or robbery) that have some dissimilarity from that of the petitioner in *Range* in a way that make them *less likely* to prevail under the Third Circuit's rationale. By contrast, Mr. Pelullo's underlying convictions, which are nonviolent and largely involve crimes of deception, are relevantly identical.

While it is true that a number of district courts across the country have held § 922(g) as facially constitutional or constitutional as applied to certain offenders, those cases are inapposite to Mr. Pelullo's case, often as expressly stated by the deciding courts. *See. e.g. United States v. O'Connor*, No. CR 03-134, 2023 WL 5542087, at *3–4 (W.D. Pa. Aug. 29, 2023) (denying motion because underlying conviction was for a violent offense: "The distinction drawn by the majority opinion in *Range* between violent and nonviolent felons does not help O'Connor."); *United States v. Freeman*, 2024 WL 348517, at *5–6 (E.D. Mich. Jan. 30, 2024) (noting that *Range* "turned on the fact that Range's underlying conviction was for a "nonviolent, non-dangerous" offense.); *United States v. Gaskin*, 2024 WL 381009, at *5–6 (D. Conn. Feb. 1, 2024) ("*Range* offers no support for Gaskin's as-applied challenge to Section 922(g)(1), because his criminal background bears no similarity to Range's.").

In short, because Mr. Pelullo's case is relevantly indistinguishable from the petitioner in *Range* and because the government cannot show a historical analogue to § 922 as applied, Mr. Pelullo's conviction on Count 24 of his indictment must be vacated, and Mr. Pelullo is entitled to a new trial.

### C. The Admission of Firearms Evidence Actually Prejudiced Mr. Pelullo, and He is Entitled to a New Trial on All Remaining Counts.

As a result of § 922 being unconstitutional as applied to Mr. Pelullo, the jury heard evidence regarding Mr. Pelullo's firearm possession that has no relevance to any of Mr. Pelullo's remaining crimes of conviction. The government's presentation of firearms in front of the jury caused undue

prejudice that had a substantial and injurious effect on assessing Mr. Pelullo's innocence on the remaining crimes of conviction. The Third Circuit has routinely held that when a jury is presented with prejudicial, collateral evidence used to tarnish the defendant's character, a new trial is warranted. This is particularly true when a jury is shown the defendant's firearms when, as here, those firearms have no relevance to the crimes alleged and are used only to imply that the defendant is dangerous, coercive, or otherwise has the propensity to commit bad acts. To extent Mr. Pelullo is not per se entitled to a new trial on the basis of Count 24 being vacated, he is certainly entitled to a new trial because all of the evidence the government used to support Count 24 is irrelevant, collateral character evidence barred by Federal Rule of Evidence 401, 402, and 404(b).

"Evidence is relevant if: it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible."  Fed. R. Evid. 402; *See also United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999) ("[I]nquiries of relevance and proper purpose are intimately intertwined. Evidence that is not relevant, by definition, cannot be offered for a proper purpose, and evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered."). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404; *see also Morley*, 199 F.3d 129 at 133 ("there is no alchemistic formula by which "bad act" evidence that is not relevant for a proper purpose under Rule 404(b) is transformed into admissible evidence."); *United States v. Smith*, 725 F.3d 340, 347 (3d Cir. 2013) q*uoting Michelson v. United States,* 335 U.S. 469, 476 (1948) ("The problem with propensity evidence is that it 'weigh[s] too much with the jury [because it] overpersuade[s] them as to prejudge one with a bad general record and den [ies] [the defendant] a fair opportunity to

defend against a particular charge,' without limitations based on whether the charged and uncharged acts are the same.").

During trial, the jury heard hours and hours of testimony regarding Mr. Pelullo's gun possession, none of which has anything to do with the remaining crimes of conviction. However, whether Mr. Pelullo possessed guns and ammunition has no tendency to make any element of his other alleged crimes, racketeering, securities fraud, wire fraud, and money laundering, more or less probable. The evidence is therefore irrelevant and is not admissible. Fed. R. Evid. 402. Further, considering *arguendo* that firearm possession would tend to make any element of these alleged crimes more probable, they would only do so in violation of Rule 404(b)'s prohibition on presenting the defendant's other "bad acts" to the jury.

The Third Circuit has routinely vacated convictions and remanded for a new trial when a jury is presented with a defendant's collateral "bad acts." Even when evidence arguably constitutes a collateral bad act, "the proponent [of the evidence] must clearly articulate how that evidence fits into a chain of logical inference no link of which may be the inference that the defendant has the propensity to commit the crime charged[,]" something that the government could not possible do here. *Morley*, 199 F.3d at 133 (citations omitted); *see also United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) ("Our opinions have repeatedly and consistently emphasized that the burden of identifying a proper purpose rests with the proponent of the evidence, usually the government.").

The admission of 404(b) evidence is not harmless error. The Third Circuit has consistently held that "proffered evidence must be excluded if the proponent neglects or is unable to articulate this chain of inferences, and **failure to exclude such evidence constitutes reversible error**." *Id.* at 276-77 (emphasis added). For instance, in *Caldwell*, the Third Circuit vacated a conviction and remanded for a new trial when evidence of the defendant's prior gun conviction, which had nothing to do with the government's theory of the case even though knowledge of the prior offense was an

element of the crime, were presented to the jury. *Id.* at 283. ("The evidence provided the jury with *nothing more than the ability to draw inferences about Caldwell's propensity to possess guns*. That evidence should not have been admitted.") (emphasis added).

Likewise, in *Penn*, the Third Circuit vacated a conviction 922(g) conviction and remanded for a new trial when the government proffered evidence of the Defendant's prior conviction for felony firearm possession, holding that the admission of evidence of a prior firearm offense does not constitute harmless error. *United States v. Penn*, 616 F. App'x 524, 526 (3d Cir. 2015). The same result was reached regarding improperly admitted firearm evidence in *Brown*. *United States v. Brown*, 765 F.3d 278, 292–93 (3d Cir. 2014) ("The Government has completely failed to explain how the fact that Brown used a straw man in 2005 to *purchase* firearms tends to prove that he knowingly *possessed* the gun under the driver's seat of the Impala six years later. These are two entirely distinct acts, and participation in one has no relationship to the other.") (emphasis in original) *see also United States v. Smith*, 725 F.3d 340, 347 (3d Cir. 2013) (erroneous admission of evidence of prior drug sale was not harmless). Further, in *Morley*, the Third Circuit ruled that even a limiting instruction, which was not given in Mr. Pelullo's case, could not cure evidence allegedly proffered to "establish the defendant's state of mind," but in fact had no value except to put in front of the jury a "jaundiced vision resulting from the prior misconduct[.]" *Morley*, 199 F.3d at 140.

Accordingly, Mr. Pelullo is entitled to a new trial because § 922 is unconstitutional as applied to him, and the jury therefore never should have heard evidence to support that unlawful charge. In the absence of a valid § 922 charge and in accordance with longstanding Third Circuit precedent, the evidence supporting the gun charge violates Fed. R. E. 404(b) because it allowed the jury to consider collateral, prejudicial evidence that had no probative value to the remaining charges. This error is not harmless, and Mr. Pelullo is entitled to a new trial.

### III. **CONCLUSION**

It is the government's burden to identify historic analogues to § 922(d) and (g) as applied to Mr. Pelullo. As Mr. Pelullo is similar in all relevant ways to the Petitioner in *Range*, a case in which the Third Circuit *en banc* held that § 922(g) was unconstitutional as applied, the government will be unable to carry its burden as a matter of law.

Because § 922 as applied to Pelullo is unconstitutional, the jury never should have heard the highly prejudicial evidence needed to support that claim. Accordingly. Mr. Pelullo is entitled to a new trial on Counts 1 – 23 of the indictment.

_____
Terrell A. Ratliff, Esquire
Attorney Id. No. 017852011
Law Office of Terrell A. Ratliff
811 Church Road- Suite 105
Cherry Hill, New Jersey 08002
Phone: (856)344-3808
Fax:(856)206-4070
Email: Terrell@Ratliffesq.com