**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

SALVATORE PELULLO.
Petitioner,

CIV NO. 24-4008 (MAS)

V.

**ORAL ARGUMENT REQUESTED**

UNITED STATES OF AMERICA
Respondent.

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF SALVATORE PELULLO'S 28 U.S.C. § 2255 MOTION**

Salvatore Pelullo ("Mr. Pelullo") brings this petition pursuant to 28 U.S.C. § 2255 to challenge the constitutionality of his conviction under 18 U.S.C. § 922(d)(1) and § 922(g)(1) for conspiring to provide firearms to himself after having been convicted of an offense punishable by more than a year in prison and for personally possessing firearms following the same underlying conviction. In light of the Supreme Court's ruling in *Bruen* and the Third Circuit's *en banc* decisions in *Range* and *Range II*, 922(d) and (g) are unconstitutional as applied to Mr. Pelullo because Mr. Pelullo's underlying offenses were non-violent and have no proper historical analogue rooted in this nation's history and tradition. The government cannot carry its burden under *Bruen* to establish that Pelullo's prior convictions for bank fraud, false statements, and wire fraud are the kinds of offenses that the framers would have recognized as offenses that allow for permanent firearm dispossession.

It is abundantly clear from the Third Circuit's *en banc* decision in *Range I* and the Third Circuit's reaffirmance of that holding and central analysis in *Range II* that Mr. Pelullo could lawfully possess the firearms at issue in this case as he was charged as a felon in possession. As a

result, his conviction cannot stand because (1) his trial was tainted by the spillover of Mr. Pelullo repeatedly and wrongfully being labeled a "felon in possession," prejudicing the jury against him on his other crimes of conviction, and (2) it is impossible to determine based on the jury instructions and verdict sheet whether the jury convicted Mr. Pelullo on the 922 charge because Mr. Pelullo conspired to provide firearms to himself, a lawful act, or because he conspired to provide them to a co-defendant who may have been constitutionally prohibited from possessing firearms.

The firearms linked to Mr. Pelullo were particularly prejudicial where, as here, his other crimes of conviction were economic and non-violent. The government mentioned the firearms and Mr. Pelullo's prior felonies on a nearly daily basis over the course of a six-month trial, using Mr. Pelullo's constitutional firearm ownership to suggest he was violent member of an organized crime organization or committed the other crimes of conviction through forceful means when scant admissible evidence supported that accusation. As set forth below, the government used lawful firearms and the label "felon in possession" to cast a pallor of prejudice over Mr. Pelullo, swaying the jury on the other crimes of conviction. This error is prejudicial in how the government mischaracterized Mr. Pelullo's lawful firearm possession and because it allowed the government to discuss Mr. Pelullo's prior convictions in front of the jury, something that it would have otherwise been barred from mentioning at trial.

Further, given that Mr. Pelullo had a constitutional right to possess the firearms at issue in this case, Count 24, which allowed the jury to convict if they found a conspiracy to provide firearms to Pelullo "and/or" his co-defendant, is too vague to stand. There is simply no way to know if the jury convicted Mr. Pelullo on Count 24 because it thought that Mr. Pelullo conspired to provide firearms to a co-defendant or whether he conspired to provide firearms to himself. A

conviction cannot stand when it rests on one of two possible grounds – one of which is lawful and the other of which is not – and it is impossible to tell which way the jury found. In either instance, Mr. Pelullo's conviction cannot stand.

## I. FACTUAL BACKGROUND AND STATEMENT OF THE CASE[1]

On October 26, 2011, the government filed a 25-count indictment against Salvatore Pelullo ("Mr. Pelullo" or "Petitioner") and twelve co-defendants, alleging, among other things, a racketeering conspiracy, securities fraud, wire fraud, and money laundering. Primarily at issue in this Petition is Count 24, which alleged violations of 18 U.S.C. §§ 922(d)(1) and (g)(1).

18 U.S.C. §§ 922(d)(1) and (g)(1) provide: "It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . (1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" and "It shall be unlawful for any person— (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year … to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Count 24 alleged that Pelullo engaged in a conspiracy "to provide firearms and ammunition to [himself and a co-defendant]," which was illegal because Pelullo and a co-defendant had each previously been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(d)(1) and 18 U.S.C. § 922(g)(1). The predicate crimes underpinning these alleged violations as to Mr. Pelullo were bank fraud, wire fraud, and securities fraud. *See* Case No. 99-cr-121-2 (E.D.

[1] This matter has a long and complicated history, including a trial that lasted over six months. The factual background is limited only to the issues that are pertinent to the relief requested in this petition.

Pa.); Case No. 02-cr-346 (E.D. Pa.); and Case No. 00-cr-404 (D. NJ).[2] Prior to the instant matter, these are the only convictions that Mr. Pelullo has ever had. As a result of pleading guilty to these non-violent offenses, Mr. Pelullo received a sentence of six months incarceration on the 1999 case and six months house arrest on the 2002 case.

Opening statements in the instant matter began on January 8, 2014, and closing arguments took place between June 4 and June 17, 2014. It is undisputed that the defendants did not use the firearms to perpetuate any of the other offenses alleged in the indictment. However, the firearms and the references to Mr. Pelullo's prior conviction permeated the trial, to the great prejudice of Mr. Pelullo.

Throughout the trial, the government repeatedly paraded the firearms connected with Count 24 before the jury even though other counts had no connection with possession and/or receipt of firearms. For instance, the Government presented the testimony of FBI Agent Jerry Hester, who detailed the seizure of the firearms and ammunition from a yacht belonging to Mr. Pelullo. Agent Hester not only presented an account of the seizure through photographs, the weapons themselves were displayed to the jury for maximum effect. Specifically, Agent Hester was permitted to walk back and forth in front of the jury, providing an up-close view of the firearms and magazines to each juror. The following firearms and ammunition were shown to the jury and prominently displayed for the duration of trial.

a. Norinco 7.62 caliber rifle, model SKS;
b. Ewbank 7.62 caliber rifle, model EMAKM;
c. Wei Dong 12 gauge shotgun, model SAS12;
d. Sig Sauer 9mm pistol, model P-6;
e. Taurus .38 caliber revolver, model 83;

---

[2] Mr. Pelullo is not challenging that his co-defendant could lawfully possess a firearm under the reasoning of *Bruen* and *Range*, but as explained at length below, the constitutional error in Count 24 is enough to require a new trial, or, alternatively, a resentencing, even without considering Mr. Pelullo's co-defendant, as is explained in detail below.

f. Taurus .22 caliber pistol, model PT-22;
g. Approximately 2500 rounds of 7.62 caliber ammunition; and
h. Seventeen additional boxes of ammunition.

All the while, it was emphasized to the jury that Mr. Pelullo could not possess the firearms because of his prior convictions. A non-exhaustive list of examples from the trial transcript where Mr. Pelullo was improperly labeled a "felon in possession" or the jury improperly heard that Mr. Pelullo could not possess firearms is attached hereto as **Exhibit A**.

To compound all of this, the government was permitted to argue that Mr. Pelullo was involved in organized crime and used the threat of violence to commit the economic crimes for which he was convicted. However, no direct evidence was presented linking Mr. Pelullo to organized crime or illustrating that he has a tendency for violence. For example, when the government called FBI Kenneth Terracciano to testify about organized crime, the trial judge remarked at sidebar, near the end of his testimony, "this is a mere fraction of what I originally thought the government was going to present evidence about organized crime. He didn't even mention Mr. Pelullo, which, again, was the original proposition that Mr. Pelullo would be identified as an associate[.]" April 17, 2014 transcript at 117:23-118:3; *see also id.* at 130:25 ("Is he going to mention Mr. Pelullo"?). Instead, the government used the firearms and the "felon in possession" label to suggest Mr. Pelullo was a dangerous criminal in order to improperly bolster its evidence on the remaining counts. Trial testimony excerpts illustrating the absence of violence or involvement in organized crime is attached hereto as **Exhibit B.**

On July 3, 2014, a jury convicted Mr. Pelullo on all counts, including Count 24.

Months after all briefing had been submitted in Mr. Pelullo's appeal to the Third Circuit, on June 23, 2022, the Supreme Court decided *Bruen*, which clarified the analysis for assessing the constitutionality of a law that implicates the Second Amendment, placing the burden on the

government to show that the regulation is consistent with this nation's history and tradition. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). On March 20, 2023, the Supreme Court denied Mr. Pelullo's petition for writ of certiorari. On June 6, 2023, the Third Circuit *en banc* decided *Range*, which held § 922(g) unconstitutional as applied to an individual who had a prior conviction for making false statements to obtain food stamps. *Range v. Att'y Gen. United States of Am.,* 69 F.4th 96, 100 (3d Cir. 2023) ("*Range I*").

Mr. Pelullo submitted his petition for habeas corpus on March 19, 2024, arguing that 18 U.S.C. § 922 is unconstitutional as applied to him in light of the holding of *Bruen* and the Third Circuit's *en banc* decision in *Range*. The Supreme Court decided a related case, *Rahimi*, in June 2024, and remanded *Range* to the Third Circuit for reconsideration in light of *Rahimi's* holding. Because of the Supreme Court's remand, the parties agreed to halt any further briefing, and this Court entered an Order stating that Mr. Pelullo may submit further briefing within sixty days of a decision in *Range II.* On December 23, 2024, the Third Circuit reaffirmed *Range I. Range v. Att'y Gen. United States*, 124 F.4th 218, 225 (3d Cir. 2024) ("*Range II*").

Pelullo petitions this Court on the basis that 18 U.S.C. § 922 is unconstitutional as applied to him considering the holding of *Bruen* and the Third Circuit's *en banc* decisions in *Range I & II*. The underlying crimes of conviction of Mr. Pelullo – all of which are non-violent and none of which resulted in a term of incarceration for longer than six months – do not provide a sufficient basis to disarm Mr. Pelullo for life. Mr. Pelullo's entire conviction is tainted by the fact that the government mislabeled him as an unlawful firearm possessor and raised prior convictions that would not have been admissible but for Mr. Pelullo's unconstitutional 922 charge.

Additionally, while Mr. Pelullo's conviction on Count 24 for conspiracy to provide firearms to a restricted felon could have rested on a jury finding that he provided firearms to a co-

defendant, who may have been constitutionally prohibited from possessing firearms, the jury was instructed that it could find guilt on Count 24 if it found that Mr. Pelullo conspired to provide firearms to himself *or* the co-defendant, and it is impossible to tell from the verdict sheet which way the jury found. True and accurate copies of the relevant jury instructions and the verdict slip are attached hereto as **Exhibits C & D.**

## II. ARGUMENT

### A. Habeas Standard and the Basis of the Constitutional Violation.

"A federal prisoner in custody under the sentence of a federal court may, within one year from when the judgment becomes final, move the sentencing court to 'vacate, set aside, or correct' a sentence 'imposed in violation of the Constitution or laws of the United States.'" 28 U.S.C. § 2255(a). *United States v. McLaughlin*, 607 F. Supp. 3d 522, 530 (M.D. Pa. 2022). "Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences" on constitutional grounds. *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002).

Under Section 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. *United States v. Scott*, 521 F. Supp. 3d 538, 542–43 (M.D. Pa. 2021) *citing* 28 U.S.C. § 2255. Courts may afford relief under Section 2255 on a number of grounds including, among other things, "that the sentence was imposed in violation of the Constitution or the laws of the United States." *Id.*; *see also* 28 U.S.C. § 2255 Rule 1(a). The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* Nevertheless, Courts have held that an error cannot be redressed through a § 2255 petition unless the error had a "substantial and injurious effect" that

resulted in "actual prejudice" to the petitioner. *Clark v. United States*, 2021 WL 3561246, at *4 (D.N.J. Aug. 12, 2021) *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citations omitted). Courts must accept the truth of the defendant's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous based on the existing record." *Scott*, 521 F. Supp. 3d at 542–43 *citing United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005).

Mr. Pelullo petitions this Court to vacate his sentence and order a new trial because the Supreme Court's decision in *Bruen* as interpreted by the Third Circuit's *en banc* decisions in *Range I & II* renders his conviction pursuant to 18 U.S.C. § 922(d) and (g) unconstitutional as applied. As set forth below, a post-*Bruen* Second Amendment analysis first considers "whether the text of the Second Amendment applies to a person and his proposed conduct." *Range II*, 124 F.4th at 225 *citing Bruen*, 142 S. Ct. at 2134–35. If it does, the government then "bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id*. Mr. Pelullo, whose § 922 triggering offenses are relevantly identical to the petitioner's in *Range,* meets this test for the same exact reasons as did the petitioner in *Range*.

Because of the inclusion of the unconstitutional § 922 charges in the indictment, the government put evidence of Mr. Pelullo's otherwise lawful firearm possession and his prior convictions in front of the jury, something the government repeatedly used to imply that Mr. Pelullo was violent, coercive, or a repeat offender. The inclusion of the § 922 charges allowed the government to use irrelevant, highly prejudicial evidence of Mr. Pelullo's lawful firearm ownership and prior convictions as a cudgel to bash his character with collateral evidence, even going so far as to place a table strewn with guns directly in front of the jury. To the extent vacating Count 24 is not sufficient on its own to warrant a new trial, the government's use of firearm

evidence, which has no probative value to the other crimes charged in the indictment and could only be used to smear Mr. Pelullo's character, warrant granting the relief requested in this petition. Mr. Pelullo is entitled to a new trial on all remaining counts.

Additionally, because Count 24 alleged a conspiracy to provide firearms to a felon in possession, and it is impossible to tell whether the jury found that Mr. Pelullo conspired to provide the firearms to himself, which is lawful, Count 24 must be vacated. Considering *arguendo* that the Court holds that the prejudicial spillover does not warrant a new trial, it must nevertheless vacate Count 24 and resentence Mr. Pelullo because it is impossible to determine whether the jury convicted Mr. Pelullo on Count 24 for actions that are lawful.

### B. 18 U.S.C. § 922 as Applied to Mr. Pelullo is Unconstitutional for the Same Reasons it was Unconstitutional as Applied to the Petitioner in *Range*.

In *Bruen*, the Supreme Court declared: "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Range II*, 124 F.4th at 225 *citing Bruen*, 142 S. Ct. at 2126. Instead, those cases instruct "that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id. quoting Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961).

Therefore, when assessing the constitutionality of a Second Amendment issue after *Bruen*, Courts must first determine whether the Second Amendment applies to a person and his conduct, and if so, the government has the burden of proving that the firearm regulation is consistent with this nation's historical tradition. *Range*, 124 F.4th at 225. In this instance, Mr. Pelullo, like the Petitioner in *Range*, asserts an as-applied challenge to § 922(g), meaning that he need not show that § 922 is unconstitutional in all instances, only that it is unconstitutional to his particular

circumstances. *See United States v. Williams, 2024 WL 665851, at *9 (M.D. Pa. Feb. 16, 2024) quoting Mazo* v. *New Jersey Sec'y of State*, 54 F.4th 124, 134 & n.7 (3d Cir. 2022) (the standard for bringing an as-applied challenge "is less demanding; a plaintiff need only show that a law's application to a particular person under particular circumstances deprived that person of a constitutional right.").

Because § 922 as applied to Pelullo is relevantly indistinguishable from § 922 as applied to the petitioner in *Range*, Mr. Pelullo's conviction on Count 24 must be vacated. *Range II*, 124 F.4th at 222 ("We agree with Range that, despite his false statement conviction, he remains among 'the people' protected by the Second Amendment. And because the Government did not carry its burden of showing that our Nation's history and tradition of firearm regulation support disarming Range, we will reverse and remand.").

**1. For the Same Reasons as Stated in *Range*, Mr. Pelullo is one of "The People" Afforded Protection by the Second Amendment.**

Clear precedent establishes that Mr. Pelullo is one of the "The People" who are afforded protection by the Second Amendment. The Supreme Court has held that the right afforded by the Second Amendment "belongs to all Americans." *D.C. v. Heller*, 554 U.S. 570, 581 (2008). In holding that the petitioner was one of the "the people" afforded protection by the Second Amendment, the Third Circuit in *Range* rejected that the Second Amendment only applies to "law-abiding citizens" (*i.e.* only those who do not have prior convictions). *Range II*, 124 F.4th at 222.

The *en banc* majority reached this decision by determining that (1) The portion of *Heller* that referenced law abiding citizens is dicta; (2) The constitution uses the phrase "the people" in multiple places, including the Second Amendment, and none of those provisions apply *only* to "law-abiding citizens"; (3) That, like other constitutional rights, even those people may avail themselves to the protections afforded by the Second Amendment may still be denied that

protection in certain circumstances, and it is therefore incorrect to determine that those with prior convictions *per se* lose their Second Amendment rights; and that (4) the Second Amendment cannot just apply to "law-abiding, responsible citizens" because that framing is too vague and expansive and has no limiting principle. *Id.* at 225-27.

Accordingly, *Range* squarely rejects the argument that the Second Amendment does not apply to individuals who have prior criminal convictions. Therefore, Mr. Pelullo, like the Petitioner in *Range*, clearly maintains his Second Amendment rights, and the burden shifts to the government to show that our Nation's history and tradition of firearm regulation supports disarming Mr. Pelullo. *See Range II*, 124 F.4th at 226 ("Because Range and his proposed conduct are protected by the Second Amendment, we now ask whether the Government can strip him of his right to keep and bear arms.").

**2. The Government Cannot Carry its Burden to Show that a Relevant Historical Analogue Exists to Support Pelullo's Conviction.**

The government cannot carry its burden in establishing that § 922 is constitutional as applied to Mr. Pelullo for the same reason that it could not establish that § 922 is constitutional as applied to the petitioner in *Range.* In determining whether the government can strip an individual of his Second Amendment rights, the government has the burden to show that the law as applied to the challenger, "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Range II*, 124 F.4th at 228 *citing Bruen*, 142 S. Ct. at 2127. "Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin.*'" *Id. quoting Bruen*, 142 S. Ct. at 2133 (emphasis in original). But "modern regulations that were unimaginable at the founding" need only be "relevantly similar" to a founding restriction. *Range*,

69 F.4th 96 at 103 *quoting United States v. Rahimi*, 602 U.S. 680, 681 (2024). "[W]hy and how the regulation burdens the right are central to this inquiry." *Id*.

The Petitioner in *Range* had a prior conviction for making false statements to an agency of the Commonwealth of Pennsylvania, a crime punishable by more than the threshold required to trigger permanent firearm dispossession pursuant to § 922(g). The *Range* petitioner challenged the constitutionality of § 922 as applied to him, and the Third Circuit held that "[b]ecause the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." *Range II*, 124 F.4th at 232. While the Third Circuit stated that its decision was "a narrow one," every aspect of the Court's analysis applies with equal force to Mr. Pelullo. *Id.*

Like the petitioner in *Range*, the triggering offenses of Mr. Pelullo are all non-violent. Further, like the *Range* petitioner, who served only a probationary sentence for his crime, Mr. Pelullo did not actually serve a term of incarceration beyond the one-year threshold for federal crimes set forth in § 922 on the underlying crimes alleged in the indictment. Accordingly, and as set forth below, each and every possible historical analogue offered by the government in *Range* should be rejected as a matter of law in Mr. Pelullo's case.

First, the government in *Range* argued that the Supreme Court in *Heller* said, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[,]" and therefore disarming felons must be deeply rooted in this nation's history. *Range*, 69 F.4th 96 at 103 *quoting Heller*, 554 U.S. at 626. However, the Third Circuit observed that the earliest version of the Federal Firearms Act of 1938 "applied only to *violent* criminals," noting:

> As the First Circuit explained: "the current federal felony firearm ban differs considerably from the [original] version .... [T]he law initially covered those convicted of a limited set of violent crimes such as murder, rape, kidnapping, and burglary, but extended to both felons and misdemeanants convicted of qualifying offenses." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011); *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

*Range II*, 124 F.4th at 229 (emphasis in original). Therefore, setting aside the question of whether a law from 1938 is old enough to be deeply rooted in this nation's history and tradition, the Third Circuit held that an offense not criminalized until 1961 certainly was not old enough to pass constitutional muster. *Id.* Because the petitioner in *Range*, like Mr. Pelullo, had no violent triggering offenses, the current version of § 922(g) is not longstanding enough to justify its own constitutionality as applied to him.

Next, the Third Circuit rejected the argument that the *Range* petitioner could be disarmed based on his status as a convicted felon. *Range II*, 124 F.4th at 229 ("That Founding-era governments disarmed groups they distrusted like Loyalists, Native Americans, Quakers, Catholics, and Blacks does nothing to prove that Range is part of a similar group today. And any such analogy would be far too broad[].") (citations omitted). Likewise, and for the largely the same reason, the Third Circuit rejected the government's argument that because some convicts have historically faced harsher punishments than just disarmament, such as execution, a lesser punishment, is therefore constitutional. *Id.* at 231 ("Yet the Founding-era practice of punishing some nonviolent crimes with death does not suggest that the *particular* (and distinct) punishment at issue here—de facto lifetime disarmament for all felonies and felony-equivalent misdemeanors—is rooted in our Nation's history and tradition.").

As Mr. Pelullo's prior convictions also involve false statements for financial gain and likewise show no indicia of violence, the Third Circuit's holding that § 922 is unconstitutional as applied to the *Range* petitioner applies with equal force to Mr. Pelullo. *See also Range II, 124*

*F.4th at 286 (Roth, J., concurring)* ("I am convinced that, in the case of a nonviolent, reformed offender, the loss of the right to possess firearms should not be de facto permanent."); *Id.* at 294 (*Schwartz, J., dissenting*) ("[T]he Majority's analytical framework leads to only one conclusion: there will be no, or virtually no, non-violent felony or felony-equivalent crime that will bar an individual from possessing a firearm.").

Following *Range*, a number of courts have held § 922(g) to be unconstitutional as applied, often dismissing indictments or reversing convictions. *See e.g., United States v. Daniels*, 2025 WL 33402, at *5 (5th Cir. Jan. 6, 2025) (reversing judgment of conviction and holding drug user-in-possession law is unconstitutional as applied); *United States v. Connelly*, 117 F.4th 269, 272 (5th Cir. 2024) (upholding ruling to dismiss 922(d)(3) and (g)(3) indictment); *United States v. Ragans*, 2025 WL 88963, at *1 (S.D. Ill. Jan. 14, 2025) (dismissing 922(g) indictment when prior felony was reflects felony convictions for aggravated battery and unlawful restraint); *Commonwealth v. Anderson*, 2024 WL 5205507, at *6 (Pa. Super. Ct. Dec. 24, 2024) (vacating state felon in possession equivalent pursuant to *Range* for the triggering offense of drug trafficking); *United States v. Brown*, 2024 WL 4665527, at *5 (S.D. Ill. Nov. 4, 2024) (Dismissing 922(g) indictment when triggering felony was residential burglary); *United States v. Griffin*, 2023 WL 8281564, at *9 (N.D. Ill. Nov. 30, 2023) (Ruling 922(g) as unconstitutional as applied despite the defendant's prior convictions for robbery, criminal trespass, and possession of controlled substances: "While the Court acknowledges that Griffin, now age 35, does not have a 'clean' record, the Court finds that Griffin's criminal record, containing no improper use of a weapon, as well as the non-violent circumstances of his arrest do not support a finding that he poses a risk to public safety such that he cannot be trusted to use a weapon responsibly and should be deprived of his Second Amendment right to bear arms in self-defense."); *United States v. Cherry*, 2024 WL 379999, at *5 (S.D. Ill.

Feb. 1, 2024) (Dismissing 922(g) indictment despite the defendant having, "felony convictions for an acting with others Aggravated Robbery and Attempted Vehicular Hijacking when [defendant] was 17 years old" and "federal felon in possession of a weapon charges."); *United States v. Anderson*, 2023 WL 7531169, at *11 (N.D. Ill. Nov. 13, 2023) (Recognizing that gun violence is a societal problem, but nevertheless holding "this court is unable to uphold § 922(g)(1) as constitutional due to *Bruen*'s instruction that the government must provide evidence of a historical analogue that is both comparably justified and comparably burdensome of the right to keep and bear arms."); *United States v. Williams*, 2024 WL 731932, at *25 (E.D. Mich. Feb. 22, 2024) ("Because the government does not identify a historical analog that is 'distinctly similar' or 'relevantly similar' to § 922(g)(1), the Court is required by *Bruen* to find the statute unconstitutional as applied to Defendant."); *United States v. Quailes*, 2023 WL 5401733, at *1 (M.D. Pa. Aug. 22, 2023) (dismissing indictment when defendant had prior convictions for felony drug offenses involving the possession with intent to distribute heroin and cocaine, holding that general regulations establishing "disarming the dangerous" were an insufficient historical analogue to carry the government's burden.) (reversed on other grounds); *United States v. Harper*, 2023 WL 5672311, at *12–13 (M.D. Pa. Sept. 1, 2023) (dismissing indictment when defendant had prior armed robbery and drug convictions, rejecting a "dangerousness" standard and instead holding that the government has the burden to show that disarming individuals for specific offenses were consistent with this nation's history and tradition) (reversed on other grounds).

While all of the above cases held that § 922 as applied was unconstitutional, they involved crimes (typically drug crimes or robbery) that have some dissimilarity from that of the petitioner in *Range* in a way that actually make them *less likely* to prevail under the Third Circuit's rationale.

By contrast, Mr. Pelullo's underlying convictions, which are nonviolent and involve crimes of deception, are relevantly identical to the crime of conviction of the *Range* petitioner.

Likewise, while it is true that a number of district courts across the country have held § 922(g) as facially constitutional or constitutional as applied to certain offenders, those cases are inapposite to Mr. Pelullo's case, often as expressly stated by the deciding courts. *See. e.g. United States v. O'Connor*, No. CR 03-134, 2023 WL 5542087, at *3–4 (W.D. Pa. Aug. 29, 2023) (denying motion because underlying conviction was for a violent offense: "The distinction drawn by the majority opinion in *Range* between violent and nonviolent felons does not help O'Connor."); *United States v. Freeman*, 2024 WL 348517, at *5–6 (E.D. Mich. Jan. 30, 2024) (noting that *Range* "turned on the fact that Range's underlying conviction was for a "nonviolent, non-dangerous" offense.); *United States v. Gaskin*, 2024 WL 381009, at *5–6 (D. Conn. Feb. 1, 2024) ("*Range* offers no support for Gaskin's as-applied challenge to Section 922(g)(1), because his criminal background bears no similarity to Range's.").

In short, because Mr. Pelullo's case is relevantly indistinguishable from the petitioner in *Range* and because the government cannot show a historical analogue to § 922 as applied, Mr. Pelullo's conviction on Count 24 of his indictment must be vacated, and Mr. Pelullo is entitled to a new trial on all remaining counts.

### C. The Admission of Firearms Evidence Actually Prejudiced Mr. Pelullo, and He is Entitled to a New Trial on All Remaining Counts.

Because § 922 is unconstitutional as applied to Mr. Pelullo, the jury heard evidence regarding Mr. Pelullo's firearm possession and prior convictions that had no relevance to any of Mr. Pelullo's remaining crimes of conviction and would have otherwise been banned by Rule of Evidence 404(b). *See* **Exhibit A**. The government's presentation of firearms in front of the jury and repeated assertion that Mr. Pelullo was not a lawful firearm owner caused undue prejudice that

had a substantial and injurious effect on the jury's ability to assess Mr. Pelullo's innocence on the remaining crimes of conviction. This is true regardless of whether Mr. Pelullo's co-defendant could be lawfully dispossessed of his firearm rights because had the government *only* charged Mr. Pelullo with conspiring to provide firearms to his co-defendant, it could not have told the jury that Mr. Pelullo's firearm possession was unlawful, and it could not have mentioned Mr. Pelullo's prior felonies in front of the jury.

The Third Circuit has routinely held that when a jury is presented with prejudicial, collateral evidence used to tarnish the defendant's character, a new trial is warranted. This is particularly true when a jury is shown the defendant's firearms and are used only to imply that the defendant is dangerous, coercive, or otherwise has the propensity to commit bad acts. To extent Mr. Pelullo is not per se entitled to a new trial on the basis of Count 24 being vacated, he is certainly entitled to a new trial because all of the evidence the government used to support Count 24 is irrelevant, collateral character evidence barred by Federal Rule of Evidence 401, 402, and 404(b).

"Evidence is relevant if: it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402; *See also United States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999) ("[I]nquiries of relevance and proper purpose are intimately intertwined. Evidence that is not relevant, by definition, cannot be offered for a proper purpose, and evidence that may be relevant for some purposes may be irrelevant for the purpose for which it is offered."). "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404; *see also Morley*, 199 F.3d 129 at 133 ("there is no alchemistic formula by which "bad act" evidence that is not relevant for a proper purpose under

Rule 404(b) is transformed into admissible evidence."); *United States v. Smith*, 725 F.3d 340, 347 (3d Cir. 2013) q*uoting Michelson v. United States,* 335 U.S. 469, 476 (1948) ("The problem with propensity evidence is that it 'weigh[s] too much with the jury [because it] overpersuade[s] them as to prejudge one with a bad general record and den [ies] [the defendant] a fair opportunity to defend against a particular charge,' without limitations based on whether the charged and uncharged acts are the same.").

During trial, the jury heard hours and hours of testimony regarding Mr. Pelullo's "unlawful" firearm possession and prior felonies, none of which has anything to do with the remaining crimes of conviction. For instance, the jury heard:

a) "[Pelullo and his co-defendant] were both convicted felons. As a result the law prohibited them from possessing firearms. But they wanted guns anyway." **Exhibit A** at January 8, 2014, p. 79:9-12 (opening statement).

b) Extensive testimony that Mr. Pelullo modified his desk so that he could mount a firearm underneath it. *Id.* at March 2, 2014, p. 57 – 59. *See also* **Exhibit B** April 17, 2014 p. 15 (Testimony that "based on the violence associated with the LCN" that "[m]embers and associates are known to have firearms, carry firearms or at least have access to firearms" because they "take part in acts of violence" and "protect themselves from being a victim of an act of violence.").

c) Hours of testimony regarding all of the firearms seized from a yacht belonging to Mr. Pelullo, including where all of the firearms were located, the rate of fire of the weapons, and the types and volume of ammunition located on the yacht. **Exhibit A** at April 2, 2014.

d) Testimony that Mr. Pelullo kept a firearm in a drawer that also contained "baby bibs" in a house where his children resided. *Id.* at April 10, 2014 at p. 102.

e) Minutes of closing argument devoted to firearms located on Mr. Pelullo's yacht and in his home, "[L]adies and gentlemen, there should be no doubt in your mind as to whether Salvatore Pelullo possessed that gun." *Id.* at June 17, 2014 p.162-63 (closing argument).

The remainder of Exhibit A, which totals more than 100 transcript pages, contains non-exhaustive instances where information regarding Mr. Pelullo possessing firearms or having prior felonies was mentioned in front of the jury, including during opening statement and closing argument.

The jury instructions openly acknowledge that Mr. Pelullo's prior felonies never would have been mentioned but for the government improperly charging him with being a felon who was barred from possessing a firearm. *See e.g.* **Exhibit C** at Jury Instruction #180 ("You heard . . . that Salvatore Pelullo was convicted before this incident in the United States District Court for the Eastern District of Pennsylvania of a crime. These prior convictions were brought to your attention **<u>only</u>** because they tend to establish one of the elements of the crime of possession of a firearm by a convicted felon as set forth in the Indictment.") (emphasis added).

However, whether Mr. Pelullo possessed firearms and ammunition has no tendency to make any element of his other alleged crimes, racketeering, securities fraud, wire fraud, and money laundering, more or less probable. The evidence is therefore irrelevant and is not admissible. Fed. R. Evid. 402. Further, considering *arguendo* that firearm possession would tend to make any element of these alleged crimes more probable, they would only do so in violation of Rule 404(b)'s prohibition on presenting the defendant's other "bad acts" to the jury.

The Third Circuit has routinely vacated convictions and remanded for a new trial when a jury is presented with evidence of a defendant's collateral "bad acts." Even when evidence arguably constitutes a collateral bad act, "the proponent [of the evidence] must clearly articulate how that evidence fits into a chain of logical inference no link of which may be the inference that the defendant has the propensity to commit the crime charged[,]" something that the government could not possible do here. *Morley*, 199 F.3d at 133 (citations omitted); *see also United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) ("Our opinions have repeatedly and consistently emphasized that the burden of identifying a proper purpose rests with the proponent of the evidence, usually the government.").

The admission of 404(b) evidence is not harmless error. Instead, the "proffered evidence must be excluded if the proponent neglects or is unable to articulate this chain of inferences, and **<u>failure to exclude such evidence constitutes reversible error</u>**." *Id.* at 276-77 (emphasis added). For instance, in *Caldwell*, the Third Circuit vacated a conviction and remanded for a new trial when evidence of the defendant's prior firearm conviction, which had nothing to do with the government's theory of the case even though knowledge of the prior offense was an element of the crime, was presented to the jury. *Id.* at 283. ("The evidence provided the jury with *<u>nothing more than the ability to draw inferences about Caldwell's propensity to possess guns</u>*. That evidence should not have been admitted.") (emphasis added). A finding of harmless error is also unwarranted here given how pervasive Mr. Pelullo's prior felony and his "unlawful" firearm possession was to every aspect of the trial. *See* **Exhibit A**; *see also United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1994) (A new trial based on evidentiary errors is appropriate if "the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.") (citation omitted).

Likewise, in *Penn*, the Third Circuit vacated a conviction 922(g) conviction and remanded for a new trial when the government proffered evidence of the Defendant's prior conviction for felony firearm possession, holding that the admission of evidence of a prior firearm offense does not constitute harmless error. *United States v. Penn*, 616 F. App'x 524, 526 (3d Cir. 2015). The same result was reached regarding improperly admitted firearm evidence in *Brown*. *United States v. Brown*, 765 F.3d 278, 292–93 (3d Cir. 2014) ("The Government has completely failed to explain how the fact that Brown used a straw man in 2005 to *purchase* firearms tends to prove that he knowingly *possessed* the gun under the driver's seat of the Impala six years later. These are two entirely distinct acts, and participation in one has no relationship to the other.") (emphasis in original) *see also United States v. Smith*, 725 F.3d 340, 347 (3d Cir. 2013) (erroneous admission of evidence of prior drug sale was not harmless). Further, in *Morley*, the Third Circuit ruled that even a limiting instruction could not cure evidence allegedly proffered to "establish the defendant's state of mind," but in fact had no value except to put in front of the jury a "jaundiced vision resulting from the prior misconduct[.]" *Morley*, 199 F.3d at 140.

All of this is compounded yet again by the government contending that Mr. Pelullo was part of an organized crime family despite having no direct evidence to support such a claim. *See e.g.* **Exhibit B** at April 17, 2014, p. 117-118; 130 (the Judge noting that there was no testimony linking Mr. Pelullo to organized crime and asking the government attorney when the FBI agent testifying about organized crime was even going to mention Mr. Pelullo).

To this end, the government's "background" evidence, which it sold primarily through Mr. Pelullo's prior felonies and firearm possession created a powerful inference that Mr. Pelullo was generally a "bad guy" but had very little to do with any of the crimes for which he was convicted. *See United States v. Klebig*, 600 F.3d 700, 712-13 (7th Cir. 2010). (Reversing conviction when

"background" or "context" evidence was not relevant and inflammatory to the jury). In *Klebig* the government impermissibly used evidence of the Defendant's legal firearm ownership and use of surveillance cameras on his property to "scare the jury" into thinking he was a "gun nut" when the only issue in dispute was whether the Defendant knew a firearms had been sawed off and whether he intended an oil filter to be used as a silencer); *See also Old Chief v. United States,* 519 U.S. 172, 180 (1997) (evidence is unfairly prejudicial when it has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one). The same rationale warrants a new trial for Mr. Pelullo. While the Court ruled that the organized crime evidence was admissible, the false labeling of Mr. Pelullo as a felon and an unlawful firearm owner helped to sell that narrative, swaying the jury in the government's favor on all crimes of conviction.

Accordingly, Mr. Pelullo is entitled to a new trial because § 922 is unconstitutional as applied to him, and the jury therefore should never have heard evidence that Mr. Pelullo unlawfully possessed firearms or had prior convictions. The evidence supporting the felon in possession claim as to Mr. Pelullo violates Fed. R. E. 404(b) because it allowed the jury to consider collateral, prejudicial evidence that had no probative value to the remaining charges. This error is not harmless, and Mr. Pelullo is entitled to a new trial.

**D. <u>Even if the Court Rejects Mr. Pelullo's Prejudicial Spillover Argument, Count 24 Must Be Vacated Because It is Impossible to Determine Whether the Verdict Rests on the Firearm Possession of Mr. Pelullo or his Co-Defendant.</u>**

In a letter to the Court, the government argued that Mr. Pelullo's conviction on Count 24 should stand even if Mr. Pelullo could constitutionally possess a firearm because the indictment alleges a conspiracy to provide firearms both to Mr. Pelullo and a co-defendant, and the felon in possession statute is constitutional as to the co-defendant because the co-defendant's prior convictions involved violence, and the co-defendant was on supervised release at the time of the

offense. The government's position is wrong because the jury was instructed that it could find guilt on Count 24 if Mr. Pelullo conspired to provide firearms to himself "and/or" the co-defendant, and it is impossible to tell upon which basis the jury rendered its verdict. A conviction cannot stand where it has two possible bases, one of which is lawful, and it is impossible to tell upon which ground the jury found.

"[W]here a conviction is supported by two independent theories, one of which is legally invalid, we must review the instructions for harmless error." *United States v. Harra*, 2021 WL 97446 (3d Cir. Jan. 12, 2021) (reversing a false statements conviction because one possible interpretation of the statement rendered it true) *citing Skilling v. United States,* 561 U.S. 358, 414 (2010). Courts must "presume that such errors are not harmless unless it can be 'prove[d] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id. citing United States v. Wright, 665 F.3d 560, 570–71 (3d Cir. 2012) (quoting Chapman v. California*, 386 U.S. 18, 24, (1967) (internal quotation marks and citation omitted)). "[T]hat presumption is particularly difficult to overcome where 'the government relies heavily on the improper theory, and the district court's instructions on the improper theory are 'interwoven' throughout the jury charge.'" *Id. citing United States v. Andrews*, 681 F.3d 509, 522 (3d Cir. 2012).

Here, the jury instructions specially state, "Count Twenty-Four identifies defendants Nicodemo S. Scarfo and Salvatore Pelullo as the prohibited persons with respect to the federal laws." **Exhibit C** at Instruction 175. The instructions repeatedly go on to treat the defendants as interchangeable. For instance, Instruction 176 states as the first element that, "the defendant the defendant conspired to sell or otherwise transfer a firearm or ammunition to a prohibited person (Scarfo and/or Pelullo)." Instruction 177 states that in order to find beyond a reasonable doubt, the jury must find that "Nicodemo S. Scarfo and/or Salvatore Pelullo have been convicted of a felony";

that "the defendant conspired to cause a prohibited person (Scarfo and/or Pelullo) to possess a firearm"; and that "the conspiracy for a prohibited person (Scarfo and/or Pelullo) to possess a firearm was in or affecting interstate commerce." Similar errors are contained in Instruction 181 and 183. Because Mr. Pelullo's firearm possession is constitutional pursuant to *Bruen* and *Range*, instructing the jury to find guilt on Count 24 exclusively on a finding that Mr. Pelullo conspired to provide firearms to himself, which was lawful, is an error.

The Verdict Sheet does not correct this problem because it does not contain a Special Interrogatory indicating whether the jury found that Mr. Pelullo conspired to provide firearms to his co-defendant or himself. **Exhibit D**. Stated plainly, upon reviewing the Verdict Sheet, it is impossible to tell whether the jury convicted Mr. Pelullo on Count 24 only because he conspired to provide guns to himself, which would have been lawful. *Id.* This is the exact type of vagueness problem that the Supreme Court has routinely held invalidates a conviction or a sentencing enhancement. *See e.g. United States v. Davis*, 588 U.S. 445, 454 (2019) (holding that textual vagueness as to whether a crime is "violent" can be cured by "asking a jury to decide whether a defendant's 'real-world conduct' created a substantial risk of physical violence" but not by a Court's post-hoc review of the evidence to determine whether a defendant behaved violently.). Count 24 must be vacated.

## III. <u>CONCLUSION</u>

It is the government's burden to identify historic analogues to § 922(d) and (g) as applied to Mr. Pelullo. As Mr. Pelullo is similar in all relevant ways to the Petitioner in *Range*, a case in which the Third Circuit *en banc* held that § 922(g) was unconstitutional as applied, the government cannot carry its burden.

Because § 922 as applied to Pelullo is unconstitutional, the jury never should have heard the highly prejudicial evidence needed to support that claim. Likewise, because it is impossible to determine whether the jury convicted Mr. Pelullo on Count 24 because he conspired to provide firearms to himself, a lawful act, Count 24 must be vacated. Accordingly, Count 24 must be vacated, and Mr. Pelullo is entitled to a new trial on Counts 1 – 23 of the indictment or, alternatively, a resentencing.

Respectfully submitted,

Terrell A. Ratliff, Esquire
Attorney Id. No. 017852011
Ratliff Jackson LLP
811 Church Road- Suite 105
Cherry Hill, New Jersey 08002
Phone: (856) 209-3111
Fax:(856)206-4070
Email: Terrell@Ratliffesq.com