**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

<table>
<tr><td>

SALVATORE PELULLO

v.

UNITED STATES OF AMERICA

</td><td>

**Civ. No. 24-4008 (MAS)**
**Crim. No. 11-740 (MAS)**

</td></tr>
</table>

**RESPONSE TO MOTION TO VACATE, SET ASIDE OR**
**CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Movant Salvatore Pelullo invokes 28 U.S.C. § 2255 to attack his 24 convictions and 360-month term of imprisonment following a seven-month jury trial. According to Pelullo, the Second Amendment invalidates his conviction and 60-month concurrent sentence on Count 24. That count charged him with conspiring with his codefendants Nicodemo Scarfo, William Maxwell, John Maxwell and others to (1) transfer firearms and ammunition to himself and Scarfo and (2) enable both himself and Scarfo to possess those firearms and that ammunition, even though both men had felony convictions. As for his *twenty-three* other counts of conviction and *360-month* concurrent sentences on many of those counts, Pelullo contends that supposed spillover prejudice from the firearms conspiracy count entitles him to a new trial on those many other counts. Pelullo's claims fail, for multiple

reasons. So this Court should deny his § 2255 motion, without an evidentiary hearing, and without issuing a certificate of appealability.

## BACKGROUND

In affirming Pelullo's conviction and sentence, the Court of Appeals described his offenses, prosecution and trial in detail. *United States v. Scarfo*, 41 F.4th 136 (3d Cir. 2022). (For the Court's convenience, *Scarfo* is attached.) In a nutshell, though, Pelullo, Scarfo and brothers William and John Maxwell conspired to take over, and did take over, FirstPlus Financial Group, Inc., a publicly traded company, through extortionate means. They then looted that company of $14 million, bankrupting FirstPlus and leaving its shareholders with worthless stock. *Scarfo*, 41 F.4th at 156–62.

Law enforcement discovered this scheme while investigating Scarfo's attempt to gain control of the Philadelphia branch of La Cosa Nostra, previously run by his notorious father, Nicodemo "Little Nicky" Scarfo. *Id.* at 162. Through the use of wiretaps and the execution of search and seizure warrants in New Jersey, Pennsylvania, Texas, and Florida, the Government's investigation revealed that Pelullo, Scarfo and the Maxwells had misappropriated approximately $14 million in FirstPlus's assets, conspired to violate federal securities laws, conspired to obstruct justice regarding Scarfo's federal sentence of supervised release, and conspired to commit bank and mortgage loan fraud, money-laundering, and weapons offenses.

– 2 –

All of that resulted in the attached 25-count Indictment ("Ind."). *Id.* at 163.   Count 1 charged Scarfo, Pelullo and the Maxwell brothers with conspiring to participate in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d). *Scarfo,* 41 F.4th at 164. Count 2 charged those four Defendants with conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371. *Scarfo,* 41 F.4th at 164. Count 3 charged them with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. *Scarfo,* 41 F.4th at 164. Counts 4–19 charged them with wire fraud, in violation of 18 U.S.C. § 1343. *Scarfo,* 41 F.4th at 164. Count 20 charged them with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). *Scarfo,* 41 F.4th at 164. Count 21 charged them with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. *Scarfo,* 41 F.4th at 164. Count 22 charged them with conspiracy to make false statements in connection with a loan application, in violation of 18 U.S.C. §§ 371 and 1014. *Scarfo,* 41 F.4th at 164. Count 23 charged Scarfo, Pelullo and one of the Maxwell brothers with conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k). *Scarfo,* 41 F.4th at 164. Count 24 charged all four Defendants with conspiracy to transfer a firearm to prohibited persons, or to possess a firearm by a convicted felon, in violation of 18 U.S.C. §§ 371 and 922. *Scarfo,* 41 F.4th at 164. And Count 25 charged Scarfo with being a

– 3 –

felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). *Scarfo,* 41 F.4th at 164.

The "trial stretched through eighty-four days in court over the course of seven months." *Scarfo*, 41 F.4th at 164. Several participants in the conspiracy turned on their associates and testified for the prosecution." *Id.* "Scarfo's, Pelullo's, and William Maxwell's defenses hinged on the proposition that they had simply been engaged in standard, run-of-the-mill business practices." *Id.* "John Maxwell, for his part, claimed he had been in the dark as to the others' malfeasance." *Id.* But none of the Defendants took the stand. *Id.*

The Government countered by arguing that "Legitimate businessmen don't lie, they don't cheat, they don't steal." *Id.* (cleaned up). The Government "also pointed to the mob connections behind the entire operation, explaining to the jury how organized crime works and connecting LCN, and Scarfo's and Pelullo's roles within it, to the FirstPlus scheme." *Id.* "The District Court repeatedly made clear to the jurors, however, that they could consider that evidence only as it may show that Scarfo and Pelullo (and not any of the other defendants) were linked to organized crime, and only for the purpose of determining their motives and the modus operandi of the scheme." *Id.*

The jury convicted Scarfo and Pelullo on every count and convicted the Maxwell brothers on all but the bank fraud and false statement conspiracy counts. *Id.* at 165. And the jury found that the Government "had had proven

each of the charged racketeering predicate acts that the Court had sent to the jury (which, for some of the defendants, was fewer than the eight predicates listed in the indictment)." *Id.* The jury also found that the proceeds from the various fraud and racketeering schemes, including an airplane, yacht, Bentley and jewelry bought using cash looted from FirstPlus, were forfeit. *Id.*

The District Court sentenced Pelullo to 360 months' imprisonment after finding he "had caused a loss of more than $14 million" and "had harmed more than 1,000" FirstPlus shareholder victims. *Id.* Judge Kugler imposed the statutory maximum term of imprisonment for every one of Pelullo's convictions, from 30 years for Count 21, to 20 years for Counts 1, 3–20 and 23, to five years for Counts 2 and 24, PSR ¶¶ 328, 329a, but ran those sentences concurrently.

The group of counts with the highest offense level (43) was Group 1, which aggregated the counts and predicates concerning the takeover of FirstPlus and accompanying securities fraud. *Scarfo*, 41 F.4th at 211. The four other groups—including the one encompassing the firearms conspiracy count—were anywhere from 12 to 20 offense levels lower, resulting in no increase in Pelullo's total offense level. *Id.* So his recommended guidelines sentence of life imprisonment depended upon Group 1 alone. *Id.* at 210–12.

Meanwhile, in electing to impose a 360-month term of imprisonment rather than a longer term by "imposing many consecutive sentences," Sent.

– 5 –

Tr. at 69 (attached), Judge Kugler mentioned the "[m]any, many guns involved" only briefly, *id.* at 70, to highlight Pelullo's dangerousness. That was a relevant consideration under 18 U.S.C. § 3553(a) regardless of whether Pelullo was also being sentenced for a firearms conspiracy offense.

On direct appeal, Pelullo did not raise a Second Amendment challenge to his firearms conspiracy conviction. Instead, he argued that conviction should be vacated because the Government "failed to allege in the indictment and prove at trial that, under *Rehaif v. United States*, 588 U.S. 225 (2019), he knew he was a felon when he possessed the guns" that were part of the conspiracy. *Scarfo,* 41 F.4h at 194 (cleaned up). Pelullo also contended that this alleged "*Rehaif* error entitle[d] him to 'complete dismissal of the indictment' or, at a minimum, vacatur of the RICO conspiracy conviction, since the indictment and the government's case at trial relied heavily on the firearms." *Scarfo*, 41 F.4th at 196 n.55 (quoting one of Pelullo's many direct appeal submissions).

The Court of Appeals rejected both contentions. *Id.* at 194–96. It saw no need to address the *Rehaif* challenge to the § 922(g)(1) object of the firearms conspiracy count because there "was an independent and sufficient basis to affirm the guilty verdict" on that count given the § 922(d)(1) object of that conspiracy. *Scarfo*, 41 F.4th at 195–96. As for the spillover prejudice claim, "the case against Pelullo at trial on the other counts rested on a great deal

– 6 –

more evidence than just his involvement with firearms—namely, the extensive testimonial and documentary proof of his leading role in the FirstPlus takeover scheme." *Id.* at 196 n.55.

Pelullo timely filed the attached petition for a writ of certiorari ("Cert. Pet."). In it, he finally raised for the first time a Second Amendment challenge to his firearms conspiracy conviction. Cert. Pet. at I, 5–21. After the Solicitor General waived the United States's right to respond, the Supreme Court denied the petition on March 20, 2023. *See Pelullo v. United States*, 43 S. Ct. 1044 (2023) (mem.). That is when Pelullo's conviction became final for collateral review under 28 U.S.C. § 2255. *See Clay v. United States*, 537 U.S. 522, 525 (2003).

On March 19, 2024, Pelullo filed a timely § 2255 motion. DE1.[1] That motion asserted two claims. First, Pelullo contended his firearms conspiracy conviction violated the Second Amendment under *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc), *vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024) [*Range I*], because his and Scarfo's prior convictions were not of the nature that could justify lifetime disarmament. DE1 at 1–2, 4–13. Second, Pelullo contended that spillover prejudice from the firearms

---

[1] "DE" refers by number to a docket entry in this case. Citations to pages of that docket entry, *e.g.*, DE1 at 3–4, use the pagination in the entry's header.

– 7 –

conspiracy tainted the jury's verdict on his other counts of conviction, entitling him to a new trial. DE1 at 4–5, 13–16.

A few months after he filed his § 2255 motion, however, the Supreme Court granted the Government's certiorari petition in *Range I*, vacated the judgment in that appeal and remanded the case "for further consideration in light of *United States v. Rahimi*, 144 S. Ct. 1889 (2024)." *Garland v. Range*, 144 S. Ct. 2706 (2024). And the following month, the Court of Appeals held that a convicted felon who is "completing his sentence on supervised release does not have a Second Amendment right to possess a firearm." *United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024), *cert. denied*, No. 24-968, 2025 WL 1787742 (U.S. June 30, 2025).

After the Government brought these developments to Pelullo's attention, at the parties' request, this Court stayed all briefing on the § 2255 motion until (1) the *Range* remand proceedings had concluded and (2) *Moore* had become final on direct review. DE17. Both conditions have now been satisfied. On December 23, 2023, the Court of Appeals issued *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) (en banc) [*Range II*]. And on June 30, 2025, the Supreme Court denied the defendant's petition for a writ of certiorari in *Moore*. *See Moore*, 2025 WL 1787742.

Meanwhile, on February 21, 2025, Pelullo filed a supplemental memorandum of law in support of his § 2255 motion. DE18. That

– 8 –

supplemental memorandum restated, with some changes, the same two claims Pelullo had raised in his initial filing. The most significant of those changes is that Pelullo has abandoned any contention that the Second Amendment does not permit Scarfo's disarmament. But the supplemental memorandum also asserts a new, third claim: that there is no way to tell whether his conviction on Count 24 rested on the jury's finding that he had conspired to provide firearms to Scarfo as opposed to just himself, and that this "vagueness" justifies vacating that conviction. DE18 at 2–3, 22–24.

## ARGUMENT

Pelullo's § 2255 motion is timely, insofar as it rests on his Second Amendment and spillover prejudice claims. But his new "vagueness" claim is not timely. In addition, Pelullo procedurally defaulted his Second Amendment claim by not raising it in the District Court or the Court of Appeals. But this Court need not wade into the thickets of timeliness and procedural default. Pelullo's claims all fail through a combination of the concurrent sentence doctrine and the relitigation bar. They also fail on their merits.

### A. Under the Concurrent Sentence Doctrine, this Court Can Deny Pelullo's § 2255 Motion without Addressing His Procedurally Defaulted Second Amendment Claim.

This Court can deny Pelullo's § 2255 motion under the concurrent sentence doctrine without ever reaching the merits of his Second Amendment

– 9 –

claim. *See Clark v. United States*, 76 F.4th 206, 209 n.2 (3d Cir. 2023)

(describing concurrent sentence doctrine), *cert. denied*, 144 S. Ct. 1382 (2024);

*Duka v. United States*, 27 F.4th 189, 194 (3d Cir. 2022) (affirming Judge

Kugler's invocation of that doctrine to deny a § 2255 motion without reaching

the merits of the prisoners' collateral attack). Indeed, the Government has

raised that very argument in opposing John Maxwell's similar Second

Amendment challenge to the validity of his firearms conspiracy conviction.

*See* Opp. at 52–54, Docket Entry 12, *Maxwell v. United States*, No. 23-cv-

23001 (MAS) (D.N.J. June 2, 2024).

The concurrent sentence doctrine in the § 2255 context permits courts

"to avoid resolution of legal issues affecting less than all of the counts in an

indictment where at least one count will survive and the sentences on all

counts are concurrent." *Clark*, 76 F.4th at 209 n.2 (cleaned up); *see Duka*, 27

F.4th at 194. "The concept underlying this doctrine is simple: there is no use

expending the limited resources of the litigants and the judiciary reviewing a

conviction where, regardless of the outcome, the defendant will remain

subject to the same sentence." *Duka*, 27 F.4th at 194. "This common-sense

approach preserves valuable and limited judicial resources for deciding those

cases which might actually result in practical changes for the litigants." *Id.*

So sensible is this approach that a reviewing court "will only reverse the

decision of the trial judge" to apply the concurrent sentence doctrine "if no reasonable person would adopt the district court's view." *Id.* (cleaned up).

Here, Pelullo's conviction on the firearms conspiracy count had no effect on his 360-month term of imprisonment. First, Judge Kugler imposed the statutory maximum term of imprisonment for every one of Pelullo's convictions, from 30 years for Count 21, to 20 years for Counts 1, 3–20 and 23, to five years for Counts 2 and 24, PSR ¶¶ 328, 329a, but ran those sentences concurrently rather than run any of them consecutively to impose a de facto life sentence.

Second, the group of counts with the highest offense level (43) concerned the takeover of FirstPlus and accompanying securities fraud. *Scarfo*, 41 F.4th at 211. The other groups—including the one encompassing the firearms conspiracy count—did not increase Pelullo's total offense level at all. *Id.* So Pelullo's recommended guidelines sentence of life imprisonment depended upon Group 1 alone. *Id.* at 210–12. Under those circumstances, even had Pelullo succeeded in vacating his firearms conspiracy conviction in his direct appeal, he likely would not have gotten a remand for resentencing on his 23 remaining counts of conviction. *See United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013) ("[B]ecause the vacated count did not affect Ciavarella's total offense level, Guideline range, or sentence, we hold that resentencing *de novo* is not required.").

– 11 –

Third, in electing to impose a 360-month term of imprisonment rather than a longer term by "imposing many consecutive sentences," Sent. Tr. at 69, Judge Kugler mentioned the "[m]any, many guns involved" only briefly, *id.* at 70, to highlight Pelullo's dangerousness. That was a relevant consideration under 18 U.S.C. § 3553(a) regardless of whether Pelullo was also being sentenced for a firearms conspiracy offense. *See, e.g.*, *United States v. Armstrong*, 60 F.4th 1151, 1170 (8th Cir. 2023) ("possession of firearms" qualified as a "significant sentencing factor[]"). So there is no reason to believe Judge Kugler would have imposed a shorter term of imprisonment had there been no firearms conspiracy conviction.

Fourth, the Court of Appeals has already rejected Pelullo's spillover prejudice claim in a closely related context. *See Scarfo*, 41 F.4th at 196 n.55. Pelullo contended in his direct appeal that an alleged "*Rehaif* error entitle[d] him to 'complete dismissal of the indictment' or, at a minimum, vacatur of the RICO conspiracy conviction, since the indictment and the government's case at trial relied heavily on the firearms." *Scarfo*, 41 F.4th at 196 n.55 (quoting one of Pelullo's many direct appeal submissions). But "because Pelullo did not object to the government's mentions of the firearms (or the presence of the guns in the courtroom), he" bore "the burden, on plain-error review, of showing a reasonable probability that he would have been acquitted of the other charges but for the gun evidence." *Id.*

On that score, Pelullo's "conclusory claim of 'extreme prejudice" due to a 'changed … dynamic [at] trial" caused by the guns" was both "insufficient to carry that burden" and "unsupported by the record":

> While the RICO conspiracy portion of the indictment mentioned the firearms, none of the charged racketeering predicate offenses had anything to do with the firearms conspiracy. And the case against Pelullo at trial on the other counts rested on a great deal more evidence than just his involvement with firearms—namely, the extensive testimonial and documentary proof of his leading role in the FirstPlus takeover scheme.

*Id.* (quoting one of Pelullo's many direct appeal submissions).

That dooms Pelullo's claim. "Once the defendant's chance to appeal has been waived or exhausted," the courts "are entitled to presume that" he "stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164–65 (1982). So § 2255 "generally 'may not be employed to relitigate questions which were raised and considered on direct appeal.'" *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986)).

This is especially true where the issue being relitigated was "decided adversely" to the petitioner in the direct appeal. *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1997). Thus, if the § 2255 motion raises a claim that "was substantially argued to, and rejected by," the Court of Appeals on direct appeal, the claim is procedurally barred. *Riascos-Prado v. United States*, 66

F.3d 30, 34 (2d Cir. 1995) (barring "a slightly altered rearticulation of a claim that was rejected on [the] direct appeal").

There are exceptions to the relitigation bar. But "in the absence of newly discovered evidence that could not reasonably have been presented" to the district court, "a change in applicable law, incompetent prior representation by counsel, or other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims, a § 2255 petitioner may not relitigate issues that were adjudicated" during his prosecution "and on direct appeal." *United States v. Palumbo*, 608 F.2d 529, 533 (3d Cir. 1979) (per curiam).

The only change in applicable law since his direct appeal that Pelullo identifies concerns the test for determining whether a firearm regulation violates the Second Amendment, not the test for determining spillover prejudice. And Pelullo does not argue that any of the other exceptions to the relitigation bar applies to the recycled spillover prejudice claim that the Court of Appeals rejected in his direct appeal. So this Court can and should reject that claim under the relitigation bar. *See id.*

Fifth, Pelullo's spillover prejudice claim has no merit, even if he could relitigate it. He complains that the jury knew he had a prior felony conviction. But he omits that he ***stipulated*** to that prior felony conviction. DE18-3, at 141 (Jury Instr. 180). And he never sought to bifurcate the trial so

– 14 –

that the jury would learn about that prior felony conviction only after it had already found all the other elements of the firearms conspiracy offense. *See* Third Circuit Model Criminal Jury Instruction 6.18.922G-1 (providing options for bifurcating a proceeding in cases involving § 922(g)(1)). That's not just a procedural default; it's a waiver.

Beyond that, as for the seized firearms and ammunition "paraded" before the jury, that evidence was intrinsic to the charged offenses. Count 1 alleged in part that Scarfo and Pelullo armed themselves "with multiple firearms" because of their ties to La Cosa Nostra. Ind. ¶ 73. That included the arsenal of guns and ammunition seized from their yacht. Ind. ¶ 76–79. And all the guns and ammunition seized from Scarfo's residence, Pelullo's residence and office and their yacht were alleged to be part of the firearms conspiracy. Ind. ¶¶ 126–128. No wonder, then, that "Pelullo did not object to the government's mentions of the firearms or the presence of guns in the courtroom." *Scarfo*, 41 F.4th at 196 n.55. Contrary to his position now, DE18 at 16–22, ***all*** that evidence was relevant under Federal Rule of Evidence 401, and ***none*** of it was subject to Federal Rule of Evidence 404(b). *See, e.g.*, *United States v. Barkers-Woode*, 136 F.4th 496, 502–03 (3d Cir. 2025); *United States v. Sherman*, 126 F.4th 224, 233–34 (3d Cir. 2025).

All this means every one of Pelullo's many other counts of conviction and his 360-month term of imprisonment in this case would survive even if

– 15 –

he prevailed on his challenge to his firearms conspiracy conviction. That, in turn, dooms Pelullo's § 2255 motion. "Unlike a direct appeal, the crux of a habeas proceeding is a claimed right of relief from 'custody.'" *Duka*, 27 F.4th at 195 (quoting 28 U.S.C. § 2255(a)). Because Pelullo cannot show any basis to believe his 360-month term of imprisonment would become even a day shorter if he succeeded in undoing his firearms conspiracy conviction, his § 2255 motion necessarily fails. *See United States v. Ross*, 801 F.3d 374, 379–83 (3d Cir. 2015).

### B.    Pelullo's Procedurally Defaulted Second Amendment Claim Has No Merit, in Any Event.

Pelullo's Second Amendment claim would still fail even if he had not procedurally defaulted it and the concurrent sentence doctrine did not apply. Once again, the jury convicted him of participating in a dual object firearms conspiracy: "first, to provide firearms to felons (namely, Scarfo and himself)," contrary to § 922(d)(1), and "second, to unlawfully possess firearms as a felon," contrary to § 922(g)(1). *Scarfo*, 41 F.4th at 194. But just as in his direct appeal, Pelullo "has not identified any error in his conviction as to the first object of the conspiracy—namely, to transfer firearms to felons in violation of § 922(d)(1)." *Id.*

Pelullo's initial 2255 papers contended that Scarfo's supposedly non-violent prior convictions could not "allow for permanent firearm

dispossession" under the Second Amendment, DE1 at 1; *see id.* at 4 ("The underlying crimes of conviction of Mr. Pelullo and his co-defendant … do no provide a sufficient basis to disarm Mr. Pelullo or his co-defendant for life."); *id.* at 7 ("pursuant to the test set forth in *Bruen* as interpreted by the Third Circuit, he and his co-defendant had a constitutional right to possess the guns at issue in Count 24"). But Pelullo has abandoned that claim. *See* DE18 at 1–16. No wonder: Scarfo has not challenged any of his convictions on Second Amendment grounds. And he did not complete his supervised release for his then most recent Federal felony conviction until April 2008. *See* Pelullo PSR ¶ 56, 98, 127. Yet while on supervised release, Scarfo conspired with Pelullo and others to obtain multiple firearms and ammunition.

In September 2007, while Scarfo was still on supervised release, John Maxwell delivered a firearm to him at Pelullo's behest. *Scarfo*, 41 F.4th at 162, 195–97 & n.55; *see* Pelullo PSR ¶ 120. Likewise, by December 2007, while Scarfo was still on supervised release, Maxwell's son Cole delivered an arsenal of firearms and ammunition to Scarfo and Pelullo's yacht in Florida, at the behest of both men. *See Pelullo* PSR ¶¶ 107–109, 124–126. Meanwhile, Pelullo **knew** that Scarfo was on supervised release. *See* Pelullo PSR ¶¶ 100–101, 103. Indeed, the jury convicted Pelullo of conspiring to obstruct Scarfo's supervised release. *See Scarfo*, 41 F.4th at 163, 165; Pelullo PSR ¶¶ 10, 15, 97–103.

Under Third Circuit precedent, while he was on supervised release, Scarfo had no Second Amendment right to bear arms. *See Moore*, 111 F.4th at 273. So punishing Pelullo for conspiring to transfer firearms and ammunition to Scarfo and help him possess them during his supervised release cannot violate anyone's Second Amendment rights. *See United States v. Knipp*, 138 F.4th 429, 435 (6th Cir. 2025) ("The Second Amendment protects the right to acquire a firearm only when necessary to enable the acquirer to possess or carry one. So the right to acquire is limited by lawful constraints on the right to possess."). Even if Pelullo had standing to allege a violation of Scarfo's Second Amendment rights, there was no such violation as a matter of law.

Beyond that, Pelullo likely does not have standing to argue that his conviction violates someone else's Second Amendment rights. The Supreme Court's most recent Second Amendment decisions don't address the constitutionality of restrictions on sales or transfers of firearms to prohibited persons (as opposed to carrying or possession by those persons). *See New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10 (2022) ("the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home"); *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (persons subject to certain restraining orders "may—consistent with the Second Amendment—be banned from possessing firearms while the order is in effect").

– 18 –

Moreover, unlike the Sixth Circuit, the Third Circuit has yet to hold that "the Second Amendment's text" even "presumptively protects the act of selling or transferring a firearm to a felon[.]" *Knipp*, 138 F.4th at 435. And Pelullo cites no precedent holding that § 922(d)(1) is unconstitutional. Instead, every Circuit to consider the statute has upheld it, including the Sixth. *See Knipp*, 138 F.4th at 435 ("Because this circuit has upheld the federal felon-in-possession law against facial attack, Knipp's facial challenge to § 922(d)(1) likewise fails."); *United States v. Sanches*, 86 F.4th 680 (5th Cir. 2023) (per curiam) (rejecting plain error challenge to § 922(d)(1) because "[t]here is no binding precedent holding § 922(d)(1) unconstitutional, and it is unclear that *Bruen* dictates such a result") (cleaned up); *Teixeira v. County of Alameda*, 873 F.3d 670, 683 (9th Cir. 2017) (en banc) ("Nothing in the text of the Amendment, as interpreted authoritatively in *Heller*, suggests the Second Amendment confers an independent right to sell or trade weapons.").

So Pelullo resorts to arguing that his firearms conspiracy conviction must be vacated because, given the instructions it received, the jury might have based its verdict on that count on the firearms that Pelullo himself possessed. In making that argument, however, DE18 at 23, Pelullo relies principally on direct appeal cases involving preserved claims of jury instructional error. *See United States v. Harra*, 985 F.3d 196, 204, 208–09, 223–25 (3d Cir. 2021); *United States v. Wright*, 665 F.3d 560, 570–72 (3d Cir.

– 19 –

2012). Those cases have no bearing here, because Pelullo didn't object at trial to the jury instructions for the firearms conspiracy count, and he's now seeking to overturn his conviction on that count on collateral review.

Even on direct appeal, where the jury is presented in the same count with two theories of liability, one correct and the other purportedly invalid, plain error relief is unavailable unless the claimant shows a reasonable probability that the submission of the invalid theory affected the outcome and that not correcting the error would seriously affect the fairness, integrity or public reputation of judicial proceedings. *See United States v. Duka*, 671 F.3d 329, 354–55 (3d Cir. 2011). As the Court of Appeals has already held in Pelullo's direct appeal, however, he cannot make those showings. *Scarfo*, 41 F.4th at 194 (rejecting Pelullo's plain error *Rehaif* challenge to the firearms conspiracy conviction because there was "an independent and sufficient basis to affirm the guilty verdict" on that count); *see United States v. Andrews*, 681 F.3d 509, 521–28 (3d Cir. 2012) (rejecting plain error *Skilling* claim where indictment also charged a valid wire fraud property theory for which there was overwhelming evidence of guilt and where the jury also found the defendant guilty of bribery under another statute).

But on collateral review, Pelullo has an even higher burden. Prisoners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Brecht v. Abrahamson*, 507

– 20 –

U.S. 619, 637 (1993) (cleaned up); *see United States v. Bentley*, 49 F.4th 275, 289 n.9 (3d Cir. 2022) (agreeing that "*Brecht*'s standard governs section 2255 motions" and joining "all other circuits that have considered the issue"). "This requires much more than a reasonable possibility that the result of the" trial "would have been different." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (cleaned up). "Instead, the evidence in the record must raise grave doubts about whether" the jury "would have" found "differently." *Id.* (cleaned up); *see id.* at 281 ("*Brecht* requires more than speculation").

Thus, to overturn his firearms conspiracy conviction because of purported instructional error, Pelullo's arguments must leave this Court "in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (cleaned up); *see Brown v. Davenport*, 596 U.S. 118, 136 (2022) ("*Brecht* asks … whether a federal habeas court *itself* harbors grave doubt about the jury's verdict"). So this Court should "ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?'" *O'Neal*, 513 U.S. at 436. The answer here should be "No."

Pelullo's two handguns and the ammunition seized from his office and home were only a fraction of the firearms and ammunition charged in Count 24. *Contrast* Ind. ¶ 125(f) (Pelullo's two handguns and ammunition), *with* Ind. ¶ 125(a)–(e) (six guns and thousands of rounds of ammunition on

– 21 –

Scarfo's and Pelullo's yacht plus two handguns and ammunition in Scarfo's home). Most of those firearms and nearly all that ammunition comprised the arsenal law enforcement found on Scarfo's and Pelullo's yacht—an arsenal the two men had conspired to obtain for their collective possession. Ind. ¶ 125(d). The remaining guns and ammunition—a .357 revolver, a 9mm pistol and roughly 100 rounds of 9mm ammunition—were seized from Scarfo's Egg Harbor home. Ind. ¶ 125(a)–(c), (e). And the jury convicted Scarfo separately in Count 25 for possessing those handguns and ammunition. So this Court can be confident that even if the jury instructions had referred only to Scarfo as the felon to whom he and Pelullo conspired to transfer firearms and ammunitions, the jury would have reached the same verdict. *See Colotti v. United States*, 71 F.4th 102, 117–19 (2d Cir. 2023) (strength of evidence and pattern of jury verdicts showed that instructing a jury on a § 924(c) offense supported by a valid predicate and an invalid predicate required no remedy), *cert. denied,* 144 S. Ct. 2699 (2024).

Pelullo's invocation of the void for vagueness doctrine doesn't move the needle. DE18 at 24. That doctrine would apply if he were contending that the statutes defining his offense of conviction—here, 18 U.S.C. §§ 371, 922(d)(1) and 922(g)(1)—were void for vagueness either facially or as applied to him. *See, e.g.*, *United States v. Davis*, 588 U.S. 445 (2019) (voiding for vagueness the so-called residual clause in 18 U.S.C. § 924(c)'s "crime of violence"

– 22 –

definition: § 924(c)(3)(B)); *Sessions v. Dimaya*, 584 U.S. 148 (2018) (same for 18 U.S.C. § 16(b)); *Johnson v. United States*, 576 U.S. (2015) (same for 18 U.S.C. § 924(e)(2)(B)(ii)). And that doctrine might apply had the jury instructions on Count 24 "provided no meaningful standards to guide the jury's decision" on whether Pelullo had committed the charged conspiracy offense. *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 43 (1991) (O'Conner, J., dissenting). But Pelullo raises no such challenge.

Instead, he complains that the verdict sheet for Count 24 should have specified which objects—the 922(d)(1) object or the 922(g)(1) object—for which defendants' firearms and ammunition possession—Scarfo's or Pelullo's—the jury had found proven beyond a reasonable doubt. But Pelullo never requested that the jury receive special interrogatories along those lines, even though "[t]hey can decrease the likelihood of jury confusion and aid the defendant in a complex case." *United States v. Desmond*, 670 F.2d 414, 418 (3d Cir. 1982). Nor did Pelullo contend at trial that it would violate his Second Amendment rights were the jury to base any part of its verdict on Count 24 on his own possession of firearms and ammunition. *See Black v. United States*, 561 U.S. 465, 468 (2010) ("A criminal defendant … need not request special interrogatories … in order to preserve in full *a timely raised objection to jury instructions on an alternative theory of guilt*.")

(emphasis added). So the absence of special interrogatories for Count 24 cannot entitle Pelullo to any relief.

### C. Pelullo Deserves Neither a Hearing Nor a Certificate of Appealability.

Finally, this Court can and should deny Pelullo's § 2255 motion without a hearing and deny him a certificate of appealability. Although the bar for obtaining a hearing isn't high, Pelullo can't meet it because "the motion and files and records of the case show conclusively" he "is not entitled to relief." *United States v. Lilly*, 536 F.3d 190, 195 (3d Cir. 2008) (cleaned up); *see* 28 U.S.C. § 2255(b). That's because his claims fail as a matter of law for many reasons. And because Pelullo hasn't "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), this Court should deny him a certificate of appealabilty. *See* Rule 11(a), Rules Governing Section 2255 Proceedings ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

– 24 –

## CONCLUSION

For all these reasons, this Court should deny Pelullo's § 2255 motion

and deny him a certificate of appealability.

Respectfully submitted,

ALINA HABBA
UNITED STATES ATTORNEY

By:    Mark E. Coyne
       Assistant U.S. Attorney
       Chief, Appeals Division
       (973) 297-2002

Date: July 3, 2025

## CERTIFICATION OF SERVICE

I hereby certify that on July 3, 2025, I caused a copy of this response and its attachments to be served by the notice of electronic filing generated by this Court's electronic case filing system upon:

Terrell A. Ratliff, Esq.
Ratliff Jackson LLP
811 Church Road, Suite 105
Cherry Hill, NJ 08002

_____
Mark E. Coyne
Assistant U.S. Attorney
Chief, Appeals Division

Dated: July 3, 2025